IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

EMMA FARRINGTON, on behalf of )
HOWARD FARRINGTON, )
 )
        Plaintiff, )
 )
v. )   1:15CV846
 )
NANCY BERRYHILL, )
Acting Commissioner of Social Security )
Administration, )
 )
        Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Emma Farrington, on behalf of the deceased claimant, Howard Farrington ("Farrington"), seeks review of a final decision of the Commissioner of Social Security denying his claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act").[1] The Court has before it the certified administrative record and cross-motions for judgment. (Docket Entries 6, 8, 10.) For reasons discussed below, it is recommended that Plaintiff's motion for judgment on the pleadings be denied, Defendant's motion for judgment on the pleadings be granted, and that the Commissioner's decision be affirmed.

---

[1] Nancy Berryhill recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

1

## I. PROCEDURAL HISTORY

Farrington applied for DIB on or about February 14, 2011, alleging a disability onset date of September 30, 2008. (Tr. 176-79.)[2] His application was denied initially and upon reconsideration. (Tr. 118-121, 125-27.) Thereafter, Farrington requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. 77-78.) Farrington, his attorney, and a vocational expert ("VE") appeared at the hearing on September 16, 2013. (Tr. 46-69.) A decision by the ALJ was issued on December 11, 2013, upholding the denial of Farrington's application for DIB. (Tr. 33-42.) Farrington thereafter retained another attorney who appealed the ALJ's decision to the Appeals Council on February 4, 2014. (Tr. 23-25.) Farrington died on February 28, 2014. On May 12, 2015, the Appeals Council denied Farrington's request for review of the decision. (Tr. 18-20.) The Appeals Council thereafter allowed additional information to be submitted by Farrington's counsel. (Tr. 13-14.) On August 6, 2015, after setting aside its earlier denial, the Appeals Council again denied Farrington's request for review of the ALJ's decision, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 1-5.) Farrington's widow, Emma Farrington (proceeding as "Plaintiff" in this matter), was named a substitute party and subsequently filed the instant Complaint with this Court. (Docket Entry 2.)

---

[2] Transcript citations refer to the sealed administrative record which was filed with Defendant's Answer. (Docket Entry 6.)

2

## II. STANDARD OF REVIEW

The Commissioner held that Farrington was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed

only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson*, 402 U.S. at 401. The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

### III. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(a). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(2)(A).

#### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine:

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3).
[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

4

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both his residual functional capacity[5] ("RFC") and his vocational abilities. If so, the claimant is not disabled.

20 C.F.R. § 404.1520.

Here, the ALJ first determined that Farrington had not engaged in substantial gainful activity since his alleged onset date of September 30, 2008. (Tr. 35.) The ALJ next found in step two that Farrington had the following severe impairments: alcohol dependence,

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

5

adjustment disorder, obesity, degenerative joint disease, cirrhosis, and seizures. (*Id.*) At step three, the ALJ found that Farrington did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.*) At step four, the ALJ determined that Farrington could not return to his past relevant work. (*Id.* at 40.) At step five, the ALJ determined that considering Farrington's age, education, work experience, and RFC, there were jobs in the national economy that he could perform. (*Id.* at 40-41.)

### B. Residual Functional Capacity Determination

Prior to step four, the ALJ determined Farrington's RFC based on the ALJ's evaluation of the evidence. (*Id.* at 37-40.) Reviewing the evidence as a whole, the ALJ determined that Farrington retained the RFC to "perform light work, or work which requires maximum lifting/carrying and pushing/pulling of 20 pounds, frequent lifting/carrying and pushing/pulling of up to 10 pounds, and sitting, standing or walking approximately six hours of an eight-hour day with normal breaks." (*Id.* at 37.) The ALJ further concluded that Farrington could occasionally perform postural activities, but with no exposure to hazards, such as dangerous machinery and unsupported heights. (*Id.*) The ALJ also concluded that Farrington could perform simple, routine, and repetitive tasks, but that he must avoid production, quota, and fast-paced jobs. (*Id.*)

### C. Past Relevant Work

The ALJ found in step four that Farrington had past relevant work as a sous chef and short order cook. (*Id.* at 40.) The ALJ found further that these jobs were beyond Farrington's RFC, thus, he could not perform his past relevant work any longer. (*Id.*)

6

### D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). If the claimant has established at step four that he cannot do any work he has done in the past because of his severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with his RFC, age, education, and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980). Here, the ALJ found that given Farrington's age, education, work experience, and RFC, there were jobs in the national economy that he could perform, such as an order caller, photocopy machine operator, and cashier. (Tr. 41.)

## IV. ANALYSIS

Plaintiff contends that the Commissioner erred in determining that Farrington was not disabled for purposes of the Act. (Docket Entry 9.) Plaintiff raises three arguments. First, Plaintiff contends that the ALJ failed to account for Farrington's moderate limitations in concentration, persistence, or pace ("CPP") in the RFC which resulted in a flawed hypothetical presented to the VE regarding Farrington's ability to adjust to other work. (*Id.* at 12-17.) Second, Plaintiff argues that the ALJ violated social security regulations by failing to accord the weight given to the opinions of the state agency medical consultants. (*Id.* at 17-20.) Lastly, Plaintiff contends that the ALJ erred by placing excessive weight on Farrington's ability to perform daily activities, which resulted in a flawed RFC. (*Id.* at 21-22.) For the reasons

7

below, the Court concludes that all of Plaintiff's arguments fail.

### A. Moderate Limitations in Concentration, Persistence, or Pace

Plaintiff argues that the hypothetical presented to the VE was flawed because of the ALJ's failure to account for Farrington's moderate limitations in CPP. (*Id.* at 12-17.) To support this argument, Plaintiff relies upon the holding in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). In *Mascio*, the Fourth Circuit Court of Appeals determined that remand was appropriate for three distinct reasons, one of which is relevant to the analysis of this case. Specifically, the Fourth Circuit remanded in *Mascio* because the hypothetical the ALJ posed to the VE, and the corresponding RFC assessment, did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ concluded that the claimant had moderate difficulties in maintaining CPP. *Mascio*, 780 F.3d at 637-38.

The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotations omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why moderate difficulties in CPP did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

8

Here, the ALJ determined at step three that Farrington had moderate difficulties in CPP. (Tr. 36.) In support, the ALJ's assessment was that "[t]he claimant [could] perform simple, routine, and repetitive tasks. As for episodes of decompensation, the claimant ha[d] experienced no episodes of decomposition, which have been of extended duration. The claimant ha[d] no history of recent psychiatric hospital stays." (*Id.*) "Pursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in [CPP], the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *See Talmo v. Comm'r, Soc. Sec.*, No. ELH–14–2214, 2015 WL 2395108, at *3 (D.Md. May 19, 2015) (unpublished). Here, the ALJ included in Farrington's RFC a limitation of "simple, routine, and repetitive tasks," with an additional limitation that he must "avoid production, quota, and fast-paced jobs." (Tr. 37.)

Plaintiff argues that the ALJ's RFC restrictions do not adequately account for Farrington's moderate difficulties in CPP. Indeed, as held in *Mascio*, a restriction to simple, routine, repetitive tasks will not suffice to account for a claimant's moderate limitations in CPP. *Mascio*, 780 F.3d at 638. However, the Commissioner argues that unlike *Mascio*, the ALJ here included more than a limitation to "unskilled work," ultimately accounting for Farrington's ability to stay on task. (Docket Entry 11 at 13.) The Court agrees with the latter.

Since the ruling in *Mascio*, district courts within the Fourth Circuit have had differing results as to whether an RFC with production restrictions adequately accounts for moderate limitations in CPP. *See Wilson v. Colvin*, No. 2:14-CV-3209-TLW-MGB, 2016 WL 625088, at

9

*5 (D.S.C. Jan. 15, 2016) (unpublished) (holding that "[w]hile the ALJ did refer to 'non-production pace' in his formulation of Plaintiff's RFC . . . [s]tanding alone, this does not account for a limitation in [CPP]"), *report and recommendation adopted*, 2016 WL 613891 (D.S.C. Feb. 16, 2016) (unpublished); *Scruggs v. Colvin*, No. 3:14-CV-00466-MOC, 2015 WL 2250890, at *6 (W.D.N.C. May 13, 2015) (unpublished) (finding a limitation to simple, routine, repetitive tasks in a non-production environment insufficient to account for moderate limitations in CPP). *But see Hill v. Colvin*, No. DKC 15-1027, 2016 WL 3181762, at *8 (D. Md. June 8, 2016) (unpublished) ("[T]he ALJ's inclusion of a limitation in the assessment of Plaintiff's RFC to 'no production rate for pace of work' accounts for Plaintiff's moderate difficulties in maintaining [CPP]") *report and recommendation adopted*, No. CV DKC 15-1027, 2016 WL 4269094 (D. Md. Aug. 15, 2016) (unpublished); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (unpublished) (finding that "the ALJ limited [Plaintiff] to 'simple, repetitive, routine tasks in a stable work environment at a nonproduction pace with only occasional public contact' . . . [which] specifically addressed Plaintiff's ability to stay on task as required by *Mascio*"). The Middle District of North Carolina has also taken differing views. *Compare Pulliam v. Colvin*, No. 1:13CV176, 2016 WL 843307, at *1, 5 (M.D.N.C. Mar. 1, 2016) (unpublished) (stating that although Plaintiff's RCF had restrictions including "limit[ations] to simple, routine, repetitive tasks in a non-production and non-quota based environment," the Court held that "as in *Mascio*, the ALJ here has failed to explain why the moderate limitations in [CPP] found at step three did not translate to a limitation in the RFC assessment") *with*, *Massey v. Colvin*, No. 113CV965, 2015 WL 3827574, at *7 (M.D.N.C. June

19, 2015) (unpublished) (finding that the ALJ "properly captured" Plaintiff's mental limitations with greater restrictions than *Mascio*), *recommendation adopted*, slip op. (M.D.N.C. Aug. 13, 2015).

In a recent unpublished decision, our Court provided further explanation as to the post-*Mascio* issue of whether non-production restrictions adequately account for moderate limitations in CPP. *See Grant v. Colvin*, No. 1:15CV00515, 2016 WL 4007606, at *6-9 (M.D.N.C. July 26, 2016) (unpublished). In *Grant*, the Court noted the Fourth Circuit's reliance upon the Eleventh Circuit (and concurring circuits) to reach "its conclusion in *Mascio* that a restriction to 'simple, routine tasks or unskilled work' did not adequately address moderate deficits in CPP[.]" *Id.* at *7. Thus, "review[ing] how those appellate courts (and district courts within those circuits) have ruled in cases involving a moderate limitation in CPP and a restriction to non-production work in the mental RFC," (*id.*), our Court concluded that "the weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in *Mascio* supports the view that the non-production restriction adopted in th[at] case sufficiently account[ed] for Plaintiff's moderate limitation in CPP." *Id.* at *9.

In the instant case, the ALJ found that Farrington had moderate limitations in CPP and further provided specific restrictions in the RFC that Farrington be limited to "simple, routine, and repetitive tasks," with an additional limitation that he must "avoid production, quota, and fast-paced jobs." (Tr. 37.) Thus, "the ALJ has included a specific restriction that facially addresses 'moderate' (not 'marked' or 'extreme,' *see* [20 C.F.R. § 404.1520a(c)(4)]), limitation in the claimant's ability to stay on task, i.e., a restriction to 'non-production oriented' work, [therefore] *Mascio* does not require further explanation by the ALJ[.]" *Grant*, 2016 WL

11

4007606, at *9. Having adequately accounted for Farrington's ability to "stay on task" in the hypothetical to the VE, Plaintiff's claim fails. *Dickens v. Colvin*, No. 1:15CV878, 2017 WL 318832, at *4 (M.D.N.C. Jan. 23, 2017) (unpublished); *Andujar v. Colvin*, No. 1:15CV1093, 2016 WL 7471313, at *7 (M.D.N.C. Dec. 28, 2016) (unpublished).

### B. Opinions of State Agency Medical Examining Consultants

Next, Plaintiff argues that the ALJ violated 20 C.F.R. § 404.1527 by "failing to accord what weight was given to the opinions of the state agency medical consultants." (Docket Entry 9 at 17.) The Commissioner argues to the contrary, stating that the ALJ fully considered and assigned weight to the opinions. (Docket Entry 11 at 18.) Regardless of the source, every medical opinion received must be evaluated. 20 C.F.R. § 404.1527(c). Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id.* § 404.1527(a)(2). The regulations generally provide more weight to the opinion of a treating source because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence." *Id.* § 404.1527(c)(2). Unless controlling weight is given to a treating source, several factors must be considered when determining how much weight to give any medical opinion including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from

12

a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.* § 404.1527(c)(2)-(6). State agency medical consultants are highly qualified physicians who are also experts in Social Security disability evaluation. 20 C.F.R. § 404.1527(e)(2)(i). Here, the ALJ evaluated the medical opinions of three state agency examining consultants: Dr. Anthony Smith, Dr. Ashley King, and Dr. Amanda Lam. (Tr. 38-40.) Although these medical providers were not Farrington's treating physicians, they did examine him, and thus are subject to the factors set forth in 20 C.F.R. § 404.1527(c). *See Good v. Colvin*, No. CIV.A. 1:12-3380-RMG, 2014 WL 358425, at *3, 11 (D.S.C. Jan. 31, 2014) (unpublished) (finding that an examining state agency consultant is properly considered under the "Treating Physician Rule").

The Court notes that in some cases "an ALJ's failure to explicitly state the weight he gave to a particular medical opinion constitutes harmless error, so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated." *Spurlock v. Astrue*, No. 3:12-CV-2062, 2013 WL 841474, at *20 (S.D.W. Va. Jan. 28, 2013) (unpublished) (citation omitted), *report and recommendation adopted sub nom. Spurlock v. Asture*, No. CIV.A. 3:12-2062, 2013 WL 841483 (S.D.W. Va. Mar. 6, 2013) (unpublished); *Dover v. Astrue*, No. 1:11CV120, 2012 WL 1416410, at *5 (W.D.N.C. Mar. 19, 2012) (unpublished) ("remanding th[e] case so that the ALJ could explicitly state that he was assigning great weight . . . would be a pointless exercise as the opinion . . . only serves to bolster the ALJ's determination as to Plaintiff's [RFC], as well as the ultimate decision that Plaintiff was not disabled"), *report and recommendation adopted*, No. 1:11CV120, 2012 WL 1416592

13

(W.D.N.C. Apr. 24, 2012) (unpublished). *See also Rivera v. Colvin*, No. 5:11-CV-569-FL, 2013 WL 2433515, at *3 (E.D.N.C. June 4, 2013) (unpublished) ("[A]n ALJ's failure to expressly state the weight given to a medical opinion may be harmless error, when the opinion . . . is consistent with the ALJ's RFC determination.").

In his decision, the ALJ gave "weight to the examiner's report that [Farrington] appeared disinterested and that effort was a possible factor." (Tr. 40.) Additionally, the ALJ "[gave] weight to the examiner's report that [Farrington's] prognoses were stable." (*Id.*) The ALJ also stated that "[w]eight [was] given to the examiner's opinion that [Farrington's] abilities and scores might not be accurate." (*Id.*) The ALJ then concluded by stating that he "assign[ed] weight and concur[red] with the State agency medical consultant's opinion because they were able to review [Farrington's] entire medical file." (*Id.*)

Although not well articulated, the ALJ properly evaluated and gave some weight to the opinions of the state agency examining consultants. Here, it is evident in the decision that the ALJ partially concurred with the state agency examining consultants, and attributed grounds for discounting such opinions as necessary. For example, Farrington was seen by Dr. Anthony Smith, a psychological consultative examiner who reported Farrington's uneven gait, and pleasant and cooperative demeanor. (Tr. 419-20.) Farrington was administered the Wechsler Adult Intelligence Scale-Fourth Edition and recorded primary index scores in the "extremely low" to "borderline" range. (Tr. 421-22.) The ALJ then gave weight to the examiner's opinion that Farrington's scores may not reflect his true abilities. (Tr. 38, 40.)

Case 1:15-cv-00846-LCB-JLW   Document 12   Filed 03/01/17   Page 14 of 20

Farrington also was examined by Dr. Ashley King who noted that Farrington's "judgment and insight appear[ed] poor, [and] his thinking concrete." (Tr. 453.) His Global Assessment of Functioning ("GAF") was 35. (Tr. 454.) Although Dr. King noted that "[e]ffort was possibly a factor in [Farrington's] mental status," (Tr. 453), Dr. King concluded that Farrington's "emotions, comprehension, and understanding [were] barely adequate to repetitive, simple tasks." (Tr. 454.) The ALJ considered the GAF of 35, "indicative of serious limitations," but found that "this [was] based on only one visit and is inconsistent with [Farrington's] daily activities." (Tr. 39.) The ALJ further noted the question of whether Farrington was providing his best efforts. (*Id.*) Additionally, as to the physical examination of Dr. Amanda Lam, Farrington reported left knee pain. (Tr. 473.) Upon examination, Dr. Lam provided several diagnosis for Farrington, but ultimately found that his prognosis was stable for each condition. (Tr. 475.) She also concluded that Farrington's ability to "sit, stand, lift, carry, handle objects, hear, speak, and travel [were] not impaired," and his stamina and ability to move about [was] mildly impaired. (*Id.*) The ALJ weighed that in his decision. (Tr. 39-40.)

In sum, the ALJ properly evaluated the examining consultants. In any event, any error in the articulation of the *exact* weight given to the state agency examining consultants is harmless as the ALJ's assessment of the state agency examining consultants is supported by substantial evidence. *Chandler v. Colvin*, No. 1:15-CV-214, 2017 WL 653983, at *15 (N.D.W. Va. Jan. 31, 2017) (unpublished) ("While the ALJ's explanation of weight assigned to [medical providers were] not eloquently articulated, the Court finds the ALJ's weight assignments of

15

these providers are sufficiently supported"), *report and recommendation adopted*, No. 1:15CV214, 2017 WL 653269 (N.D.W. Va. Feb. 16, 2017) (unpublished). To the extent necessary, the ALJ discounted the opinions such that there is a logical bridge between the opinions of the state agency examining consultants and Plaintiff's RFC. Furthermore, Plaintiff has not argued any limitations not accounted for in the Farrington's RFC. *Rivera*, 2013 WL 2433515, at *3. For these reasons, her argument fails.

To the extent Plaintiff argues that the ALJ failed to reference several exhibits containing numerous medical records, this argument too fails. Plaintiff readily admits that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). Plaintiff argues that the evidence not referenced by the ALJ "challenge some of the assertions made by the ALJ in the decision." (Docket Entry 9 at 20.) The Court first notes that the ALJ specifically cited to recent medical records from Duke University and concluded that they "show[ed] no evidence of significant emotional issues other [than] those related to alcohol consumption." (Tr. 39.) Plaintiff points to the ALJ's statement that Farrington "reported depression, but [he] had not sought treatment." (Docket Entry 9 at 20; *see also* Tr. 40.) Throughout his decision, the ALJ noted Farrington's issues with depression. (*See, e.g.*, Tr. 37 (noting Farrington's testimony of his inability to work "because of seizures . . . and depression" and Farrington reporting that "he was depressed and had crying spells three times weekly"); Tr. 38 (noting Farrington's medical history of depression and diagnosis of major depressive disorder); Tr. 38 (noting Farrington's statement

16

of suffering from a "depressed mood" during a consultative examination)). Farrington was in fact prescribed medication for depression in September 2011 (*see* Tr. 467), however, by his own admission in November 2011, he never sought mental health treatment for this issue.[6] (*See* Tr. 452 (Dr. King noting that Farrington had "never been psychiatrically hospitalized and ha[d] no other mental health treatment except substance abuse treatment" and further noting that Farrington "reported [that] he ha[d] never had treatment for other mental health problems); Tr. 273 (Farrington denying treatment for depression)). In sum, Plaintiff "has failed to point to *any* specific piece of evidence [purportedly] not considered by the Commissioner that might have changed the outcome of [Farrington's] disability claim." *Reid*, 769 F.3d at 865 (emphasis in original). Moreover, in several instances, the record demonstrates that Farrington's mental status and mood: oriented, logical thought processes, cooperative, goal directed, normal mood and affect, clear speech, intact and no focal weakness, motor and sensory strength, and appropriately responsive to questioning. (Tr. 274, 289-90, 325-26, 345, 397, 406, 475, 871, 905, 947, 981, 1078.) Thus, Plaintiff's claim fails.

### C. Farrington's Ability to Perform Daily Activities

Lastly, Plaintiff argues that the ALJ placed excessive weight upon Farrington's ability to perform daily activities which resulted in a flawed RFC. (Docket Entry 9 at 18-20.) The Commissioner contends that Farrington's daily activities were properly accounted for, and that the ALJ did not rely solely on Farrington's daily activities, but evaluated the record as a whole.

---

[6] The medial record also noted stability with the depression medication. (*See* Tr. 987, 1035.)

(Docket Entry 11 at 19.)  Pursuant to 20 C.F.R. § 404.1529(c)(3), a claimant's daily activities are one of several factors that the ALJ must consider in making credibility determinations. "While there clearly may be a difference between performing daily personal activities and regular work duties, a Social Security claimant's routine non-work activities of life may support a finding that a residual functional capacity to work exists." *Keen v. Colvin*, No. 1:13CV00070, 2014 WL 2115203, at *3 (W.D. Va. May 21, 2014) (unpublished) (citing *Yost v. Barnhart*, 79 F. App'x 553, 555 (4th Cir. 2003)).  Here, the ALJ found that "[Farrington's] activities (cooking, cleaning, and walking dogs) also belie disability." (Tr. 40.)  Plaintiff contends that Farrington's statements in the hearing and outside of the hearing contradict the ALJ's summary of Farrington's daily activities. (Docket Entry 9 at 21.)  At the hearing Farrington testified to doing a little yard work and helping his wife cook and clean. (Tr. 59-60.)  Plaintiff also testified as to attending church twice a week. (Tr. 60.)  The ALJ noted the findings of Dr. Smith and Dr. King. (Tr. 38-39.)  Dr. Smith indicated that Farrington reported walking dogs, showering, washing dishes, and preparing meals on the stove during a typical day. (Tr. 38; *see also* Tr. 420.)  Additionally, the ALJ noted that the report of Farrington to Dr. King that Farrington performed daily activities of cooking, cleaning, caring for personal needs and watching television. (Tr. 39; *see also* Tr. 452.)

Plaintiff argues that the ALJ's summary is contradictory in that it fails to reference Plaintiff's reports of Farrington's lost desires to do activities (*see* Tr. 419), or Dr. King's noting of Farrington's limitation of daily activities by his "tendencies to fall." (Tr. 452.)  However, the undersigned finds this argument unpersuasive.  First, the summary of daily activities by

18

the ALJ is not contradictory. Any reports of loss of desires to do activities, or limitations due to tendencies to fall does not suggest that Farrington did not perform such activities. His own testimony at the hearing demonstrates his acknowledgement of performing some daily activities. (*See* Tr. 58-60.) Here, the ALJ's reliance upon Farrington's daily activities was not excessive. Indeed, his daily activities were only part of the consideration for Farrington's RFC; the ALJ gave "careful consideration of the evidence" and concluded that Farrington's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely credible." (Tr. 38.) *See McKeithan v. Colvin*, No. 1:14CV688, 2015 WL 4493132, at *7 (M.D.N.C. July 23, 2015) (unpublished), *report and recommendation adopted*, No. 1:14CV688, 2015 WL 5178446 (M.D.N.C. Sept. 4, 2015) (unpublished) ([The ALJ's] ultimate conclusion regarding the RFC was based on the record as a whole, including the credibility determination[.]"); *Keen*, 2014 WL 2115203, at *3 ("[T]he ALJ's reliance on these activities was only one minor aspect of the stated reasons for his determination of [Plaintiff's RFC]."); *Barr v. Astrue*, No. CIV. A. 1:07CV15, 2008 WL 833098, at *39 (N.D.W. Va. Mar. 27, 2008) (unpublished) ("[T]he ALJ did not err in considering [c]laimant's every day activities as going against the disability alleged."); *see also Guthrie v. Astrue*, No. CIV. A. 3:07 CV 141, 2009 WL 1362509, at *12 (N.D.W. Va. May 14, 2009) (unpublished) ("Claimant's argument that the ALJ discredited his subjective symptoms solely because the severity is not supported by objective medical evidence is simply without merit."). Ultimately, substantial evidence demonstrates that Farrington's activities of daily living support the ALJ's RFC findings. *Yost*, 79 F. App'x at 555 (finding that "[claimant's] activities of daily living, including caring for his dogs,

19

watching television, visiting family and friends, attending church services, driving short distances, and occasional hunting support the ALJ's [RFC] determination" of a limited range of light work). Thus, Plaintiff's argument fails.

## V. CONCLUSION

For the reasons stated herein, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 8) be **DENIED**, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 10) be **GRANTED**, and that the final decision of the Commissioner be upheld.

March 1, 2017
Durham, North Carolina

                                           Joe L. Webster
                                        United States Magistrate Judge